## HARRY L. HASEY v. WILLARD A. DODGE.[1]

December 24, 1915.

Nos. 19,522—(166).

**Sale of forfeited lands — proof of authority.**

> Section 1616, G. S. 1894, provided that lands forfeited to the state for nonpayment of taxes "may be disposed of by the county auditor at public or private sale, as the auditor of state may direct, and subject to such rules and restrictions as he may prescribe." *Held:* That the rule announced in Bonham v. Weymouth, 39 Minn. 92, applies to sales under this statute; that one claiming title to land sold thereunder must prove authority from the state auditor to make such sale, and that recitals in the deed executed by the county auditor are not evidence of such authority.

Action in the district court for Hennepin county to determine adverse claims to eight vacant city lots. Willard A. Dodge, one of the defendants, in his answer alleged that he was the owner in fee and entitled to the possession of the premises. The case was tried before Leary, J., who made findings and ordered judgment in favor of defendant Dodge. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*A. X. Schall, Jr.,* for appellant.

*Andre W. Fawcett,* for respondent.

TAYLOR, C.

Plaintiff brought this action to determine adverse claims to eight vacant lots in an addition to the city of Minneapolis. Willard A. Dodge is the only defendant who interposed an answer. He alleged that he

1 Reported in 155 N. W. 640.

was the owner in fee of the lots and asked that his title thereto be quieted as against both plaintiff and the other defendants. The trial court made findings of fact and conclusions of law, and rendered judgment thereon to the effect that Dodge was the owner in fee of the property, and that neither plaintiff nor the other defendants had any right, title, estate or interest therein. Plaintiff appealed from the judgment.

Dodge held the original title to the lots and is the owner thereof, unless his title has been divested by the tax title under which plaintiff claims. Whether plaintiff has established a valid tax title is the only question presented. These lots were bid in for the state separately, on May 11, 1901, at the tax sale held under and pursuant to the tax judgment rendered on March 21, 1901, in proceedings to enforce the payment of taxes on real estate delinquent on the first Monday in January, 1901. The statute provided that "all pieces or parcels of real property bid in for the state under the provisions of this act, and not redeemed within two (by amendment three) years from the date of sale, shall become the absolute property of the state, and may be disposed of by the county auditor at public or private sale, as the auditor of state may direct, subject to such rules and restrictions as he may prescribe;" and further provided that, upon the sale of a tract of forfeited property, "the county auditor shall execute to the purchaser thereof, a deed in fee simple of the property so purchased, which shall pass to such purchaser an absolute title to the estate therein described, without any other act or deed whatever;" and further provided that such deed "shall be evidence in like manner and with the same force and effect as the certificate provided for in section eighty-four (G. S. 1894, § 1593) of this chapter." G. S. 1894, §§ 1616, 1617.

On May 13, 1904, the county auditor purporting to act under the above statute sold four of the lots in controversy to plaintiff, at private sale, as land forfeited to and the absolute property of the state under the tax sale of May 11, 1901, and executed to plaintiff deeds of conveyance therefor. Plaintiff also claims that at the same time the county auditor executed deeds for the other four lots to one Sage, and that Sage thereafter assigned his rights thereunder to plaintiff. No attempt was made to show any authority from the state auditor to make such

sales, unless such authority may be inferred from the recital thereof contained in the deed executed by the county auditor.

In Bonham v. Weymouth, 39 Minn. 92, 38 N. W. 805, the statute there under consideration provided that lands forfeited to the state for nonpayment of taxes "may be disposed of at public or private sale as the state auditor may direct under the provisions of this chapter;" and also provided that, "upon the sale of any such lands or lots by the state, the county auditor of the county in which the lands lie, shall execute a deed of conveyance thereof to the purchaser which shall vest in the grantee, his heirs or assigns, a good and valid title in law and equity and be *prima facie* evidence thereof in all the courts of this state." Chapter 11, §§ 156, 138, G. S. 1866. It was held that a deed of such forfeited lands executed by the county auditor and reciting authority from the state auditor to make the sale was "not *prima facie* evidence of title, without preliminary proof *aliunde* the deed of authority from the state auditor to the county auditor to make the sale recited in the deed." (Syllabus.)

The statute governing the present case provides that the deed shall have the same force and effect as evidence as the certificate provided for in section 84 of chapter 1 [p. 53], of the laws of 1878. Section 85 of that act provided that such certificates "shall in all cases be *prima facie* evidence that all the requirements of the law, with respect to the sale, have been duly complied with, and of title in the grantee therein, after the time for redemption has expired." In Sanborn v. Cooper, 31 Minn. 307, 17 N. W. 856, the court had under consideration a tax certificate issued under the tax law of 1874, which provided that such certificate "shall in all cases be *prima facie* evidence that all the requirements of the law with respect to the sale, have been duly complied with."[1] The court said: "It is elementary that, according to the common-law rule, this certificate would be inadmissible without proof of the authority of the auditor to make the sales. * * * If this certificate is *prima facie* evidence of any of the precedent acts necessary to clothe the auditor with authority to sell, it is only so by force of the statute, and only to the extent it is expressly made so. But this statute only makes the certificate of sale *prima facie* evidence 'that all the requirements of the

[1][Laws 1875, p. 36, c. 5, § 30.]

law in respect to the sale' have been complied with, but not of the precedent acts necessary to authorize the auditor to make the sale. It is not made *prima facie* evidence of the tax judgment which is the source of his authority to sell. This would have to be first proved *aliunde,* as before. The extent of the effect of the statute is merely to make the certificate *prima facie* evidence of the regularity of the proceedings connected with the sale itself, such as the giving of notice of the time and place of sale, the fact of sale, and that it was conducted in the manner required by law, and the like. That this is the extent to which it goes is, we think, almost self-evident from the language of the statute itself."

The rule that such certificates are not evidence of authority in the county auditor to make the sale, established by this case, has not since been departed from. 3 Dunnell, Minn. Dig. §§ 9401, 9402. The provision making the certificate *prima facie* evidence of title, "after the time for redemption has expired," added by the statute of 1878 to the provision construed in the Sanborn case, gave the certificate no greater effect than the statute considered in Bonham v. Weymouth, supra, gave to the deed there in question. In that case it was expressly held, in accordance with the rule established in prior decisions, that authority from the state auditor to make the sale must be proven by evidence other than recitals in the deed. Appellant suggests no reason why the rule established in that case is not equally applicable to the present case, and we know of none. It follows that the county auditor is not shown to have had authority to make the sales and execute the deeds in controversy, and that the judgment of the trial court must be and is affirmed.